No. 24-1209

———————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

———————————

NATIONAL ASSOCIATION FOR GUN RIGHTS, et al.,
PLAINTIFFS-APPELLANTS,

v.

JARED POLIS, in his official capacity as
Governor of the State of Colorado,
DEFENDANT-APPELLEE.

———————————

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

———————————

**BRIEF OF THE DISTRICT OF COLUMBIA, ARIZONA, CALIFORNIA, CONNECTICUT, DELAWARE, HAWAII, ILLINOIS, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW YORK, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, WASHINGTON, AND WISCONSIN AS AMICI CURIAE IN SUPPORT OF APPELLEE**

———————————

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

MARCELLA E. COBURN
Assistant Attorney General

ANNE A. DENG
Assistant Attorney General

Office of the Attorney General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 674-0753
marcella.coburn@dc.gov

# TABLE OF CONTENTS

INTRODUCTION AND INTEREST OF AMICI CURIAE...................................1

SUMMARY OF ARGUMENT ................................................................3

ARGUMENT ...............................................................................5

    I.    At Least 17 Jurisdictions Directly Regulate Kits And Other Unserialized Parts, And A Vast Majority Of Jurisdictions Regulate Firearm Serial Numbers In Some Manner............................5

    II.    The Act Protects The Public From Violent Crimes Committed With Untraceable Firearms, And The Harms Of Invalidating The Act Would Extend Beyond Colorado ....................................9

        A.    Serial Number Regulations Are Crucial To Solving Crime ........9

        B.    Invalidating The Act Will Cause An Increased Number Of Untraceable Firearms To Flood Colorado And Flow Into Other States ................................................................13

    III.    The Act Is Consistent With The Second Amendment .......................17

CONCLUSION ...........................................................................20

# TABLE OF AUTHORITIES

## *Cases*

*Abramski v. United States*,
  573 U.S. 169 (2014) ................................................................. 2

*Bianchi v. Brown*,
  111 F.4th 438 (4th Cir. Aug. 6, 2024) ................................. 13

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ....................... 17, 19

*United States v. Marzzarella*,
  614 F.3d 85 (2010) ...................................................... 11, 18, 19

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) ................................................................. 5

*Montgomery v. Rosenblum*,
  No. 3:24-cv-01273, 2024 WL 3887248 (D. Or. Aug. 20, 2024) ............... 13, 19

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022) ........................................... 4, 9, 17, 19

*New York v. Arm or Ally, LLC*,
  No. 22-cv-6124, 2024 WL 756474 (S.D.N.Y. Feb. 23, 2024) ......... 19

*Torres v. Lynch*,
  578 U.S. 452 (2016) ........................................................ 3, 10

*United Auto., Aircraft & Agric. Implement Workers of Am. v. Wis. Emp. Rels. Bd.*, 351 U.S. 266 (1956) ....................................... 3

*United States v. Holton*,
  639 F. Supp. 3d 704 (N.D. Tex. 2022) ................................. 19

*United States v. Price*,
  111 F.4th 392 (4th Cir. 2024) .......................... 5, 13, 17, 18, 19

*United States v. Reyna*,
  No. 3:21-cr-41, 2022 WL 17714376 (N.D. Ind. Dec. 15, 2022) ......... 19

*United States v. Serrano*,
  651 F. Supp. 3d 1192 (S.D. Cal. 2023)................................................... 19

*United States v. Trujillo*,
  670 F. Supp. 3d 1235 (D.N.M. 2023)..................................................... 19

*Statutes*

18 U.S.C. § 922(k) ...................................................................................... 9

Ala. Code § 13A-11-64 ............................................................................... 8

Ariz. Rev. Stat. § 13-3102 .......................................................................... 8

Ark. Code Ann. § 5-73-106 ........................................................................ 8

Ark. Code Ann. § 5-73-107 ........................................................................ 8

Cal. Penal Code § 16519 ......................................................................... 6, 7

Cal. Penal Code § 16531 ......................................................................... 6, 7

Cal. Penal Code § 23900 ............................................................................. 8

Cal. Penal Code § 23920 ............................................................................. 8

Cal. Penal Code § 29180 ......................................................................... 6, 7

Cal. Penal Code § 29182 ............................................................................. 7

Cal. Penal Code § 29185 ............................................................................. 7

Cal. Penal Code § 30400 .......................................................................... 6, 7

Colo. Rev. Stat. § 18-12-111.5 .............................................................. 2, 6, 7

Colo. Rev. Stat. § 18-12-103 ....................................................................... 8

Colo. Rev. Stat. § 18-12-104 ....................................................................... 8

Conn. Gen. Stat. § 29-36 ............................................................................. 8

Conn. Gen. Stat. Ann. § 29-36a ................................................................ 7

Conn. Gen. Stat. Ann. § 53-206j ........................................................... 6, 7

D.C. Code § 7-2501.01 ............................................................................ 6

D.C. Code § 7-2504.08 ............................................................................ 7

D.C. Code § 7-2505.01 ............................................................................ 7

D.C. Code § 7-2505.02 ............................................................................ 7

D.C. Code § 22-4512 ............................................................................... 8

D.C. Code § 22-4514 ............................................................................... 6

Del. Code Ann. tit. 11, § 1448A ............................................................. 7

Del. Code Ann. tit. 11, § 1448B ............................................................. 7

Del. Code Ann. tit. 11 § 1459 ................................................................. 8

Del. Code Ann. tit. 11, § 1459A ......................................................... 6, 7

Fla. Stat. § 790.27 .................................................................................. 8

Ga. Code. Ann. § 16-9-70 ...................................................................... 8

Haw. Rev. Stat. Ann. § 134-10 .............................................................. 8

Haw. Rev. Stat. Ann. § 134-10.2 ....................................................... 6, 7

720 Ill. Comp. Stat. Ann. § 5/24-5.1 ................................................. 6, 7

720 Ill. Comp. Stat. Ann. § 5/24-5 ........................................................ 8

Ind. Code § 35-47-2-18 ....................................................................... 8, 9

Kan. Stat. Ann. § 21-6306 ...................................................................... 9

Ky. Rev. Stat. Ann. § 527.030 ............................................................... 9

Ky. Rev. Stat. Ann. § 527.050 ................................................................. 8

La. Rev. Stat. § 40:1792 ....................................................................... 8

Md. Code Ann., Pub. Safety § 5-703 ................................................. 6, 7, 8

Me. Stat. tit. 17-A § 705 ................................................................... 8, 9

Mich. Comp. Laws § 750.230 .................................................................. 9

Minn. Stat. Ann. § 609.667 ............................................................ 6, 8, 9

Mo. Rev. Stat. § 571.045 ........................................................................ 9

Mo. Rev. Stat. § 571.050 ........................................................................ 8

Mont. Code Ann. § 45-6-326 .............................................................. 8, 9

N.C. Gen. Stat. § 14-160.2 ................................................................ 8, 9

N.D. Cent. Code § 62.1-03-05 ................................................................ 9

N.H. Rev. Stat. Ann. § 159:13 ................................................................ 9

N.J. Stat. Ann. § 2C:39-3 ................................................................. 6, 8

N.J. Stat. Ann. § 2C:39-9 ............................................................. 6, 7, 9

N.J. Stat. Ann. § 2C:58-2 ....................................................................... 8

N.Y. Penal Law § 265.01 ........................................................................ 6

N.Y. Penal Law § 265.02 ........................................................................ 8

N.Y. Penal Law § 265.07 ........................................................................ 7

N.Y. Penal Law § 265.10 ........................................................................ 9

N.Y. Penal Law § 265.60 ........................................................................ 7

Neb. Rev. Stat. § 28-1207 ...................................................................... 8

Neb. Rev. Stat. § 28-1208 ........................................................................... 9

Nev. Rev. Stat. Ann. § 202.277 .............................................................. 8, 9

Nev. Rev. Stat. Ann. § 202.363 ................................................................. 6

Nev. Rev. Stat. Ann. § 202.364 ................................................................. 7

Nev. Rev. Stat. Ann. § 202.3625 ............................................................... 7

Nev. Rev. Stat. Ann. § 202.3635 ............................................................... 7

Ohio Rev. Code Ann. § 2923.201 ........................................................... 8, 9

Okla. Stat. tit. 21 § 1550 ............................................................................ 9

Or. Rev. Stat. § 166.250 ............................................................................. 6

Or. Rev. Stat. § 166.265 ......................................................................... 6, 7

Or. Rev. Stat. § 166.450 ............................................................................. 9

18 Pa. Cons. Stat. § 6110.2 ........................................................................ 8

18 Pa. Cons. Stat. § 6117 ........................................................................... 9

R.I. Gen. Laws Ann. § 11-47-2 .................................................................. 6

R.I. Gen. Laws Ann. §§ 11-47-8 ........................................................... 6, 7

R.I. Gen. Laws § 11-47-24 ......................................................................... 8

R.I. Gen. Laws Ann. § 11-47-40 ................................................................ 8

S.C. Code. Ann. § 16-23-30 ....................................................................... 8

S.D. Codified Laws § 22-14-5 .................................................................... 8

Tex. Penal Code Ann. § 31.11 .................................................................... 9

Utah Code Ann. § 76-10-522 ...................................................................... 9

Va. Code Ann. § 18.2-311.1 ......................................................... 9

Vt. Stat. tit. 13, § 4083 ............................................................ 6, 7

Vt. Stat. tit. 13, § 4084 ............................................................... 8

Wash. Rev. Code Ann. § 9.41.092 .............................................. 8

Wash. Rev. Code Ann. § 9.41.111 .............................................. 8

Wash. Rev. Code Ann. § 9.41.113 .............................................. 8

Wash. Rev. Code Ann. § 9.41.140 .............................................. 9

Wash. Rev. Code Ann. § 9.41.326 .............................................. 6

Wash. Rev. Code Ann. § 9.41.328 .............................................. 8

Wash. Rev. Code Ann. § 9.41.190 .............................................. 7

## *Regulations*

Definition of "Frame or Receiver" and Identification of Firearms,
87 Fed. Reg. 24652 (Apr. 26, 2022) ................................. 15, 18

## *Other Authorities*

Andrew Blankstein & Eric Leonard, *Ex-con who killed California cop used
homemade 'ghost gun,'* NBC News (Aug. 15, 2019) ........................ 14

Melissa Block, *The Low-Tech Way Guns Get Traced, NPR* (May 20, 2013).. 10, 13

Bureau of Alcohol, Tobacco, Firearms & Explosives, Nat'l Tracing Ctr.,
*Fact Sheet* (Jun. 2020) ..................................................... 11

Bureau of Alcohol, Tobacco, Firearms & Explosives, *Fact Sheet eTrace*
(April 2024) ................................................................. 12

Philip J. Cook et al., *Some Sources of Crime Guns in Chicago: Dirty
Dealers, Straw Purchasers, and Traffickers,*
104 J. Crim. L. & Criminology 717 (2015) .......................... 18

Zak Dahlheimer, *Behind-the-scenes Look at the Bureau of Alcohol, Tobacco, Firearms and Explosives National Tracing Center*, WTKR (Oct. 13, 2021) ............................................................................ 12

Ari Davis et al., *U.S. Gun Violence in 2021: An Accounting of a Public Health Crisis* (Johns Hopkins Ctr. For Gun Violence Sols. 2023) ..................... 1

Dep't of the Treasury, Bureau of Alcohol, Tobacco & Firearms, *Following the Gun: Enforcing Federal Laws Against Firearms Traffickers* (Jun. 2000) ............................................................................ 11

Brian Freskos, *How a Gun Trace Works*, Trace (Jul. 8, 2016) ....................... 11, 12

John Gramlich, *What the Data Says About Gun Deaths in the U.S.*, Pew Rsch. Ctr. (Feb. 3, 2022) .................................................................. 12

Sari Horwitz, *Guns Used in San Bernardino Shooting Were Purchased Legally from Dealers*, Wash. Post (Dec. 3, 2015) ............................................... 13

Jeanne Laskas, *Inside the Federal Bureau Of Way Too Many Guns*, GQ (Aug. 30, 2016) .................................................................... 10, 11

Press Release, Off. of Pub. Affs., U.S. Dep't of Just., *Fact Sheet: Update on Justice Department's Ongoing Efforts to Tackle Gun Violence* (Jun. 14, 2023) .................................................................... 15

Stephanie Ramirez, *Mother of Magruder shooting victim sues school, county*, Fox 5 Wash. D.C. (Dec. 1, 2022) ............................................... 14

Stealth Arms Parts & Accessories, *JSDSupply* ...................................... 16

Glenn Thrush, *'Ghost Guns': Firearm Kits Bought Online Fuel Epidemic of Violence*, New York Times (Nov. 14, 2021) ....................................... 14

Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense*, 56 UCLA L. Rev. 1443 (2009) ........................................... 19

Bill Whitaker, *Ghost Guns: The build it yourself firearms that skirt most federal gun laws and are virtually untraceable*, CBS News (May 10, 2020) .................................................................... 16

## INTRODUCTION AND INTEREST OF AMICI CURIAE

In recent years, advances in firearms technology have contributed to the rapid proliferation of "ghost guns": unserialized and untraceable firearms that can be built at home, including from easily assembled weapon parts kits. At the same time that ghost guns first flooded the market, gun violence skyrocketed across the country. Gun-related homicides rose by 45% between 2019 and 2021, contributing to "the largest two-year increase [in homicides] ever recorded" by the Centers for Disease Control and Prevention. Ari Davis et al., *U.S. Gun Violence in 2021: An Accounting of a Public Health Crisis* 7 (Johns Hopkins Ctr. For Gun Violence Sols. 2023), https://tinyurl.com/mszmmzdc. Senate Bill 23-279 ("the Act") is Colorado's commonsense response to this influx of ghost guns. And Colorado is in good company: at least 17 jurisdictions now regulate ghost guns or firearm components as a means of safeguarding their residents.

The District of Columbia, Arizona, California, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, and Wisconsin (collectively, the "Amici States"), file this brief as amici curiae in support of appellee Jared Polis pursuant to Federal Rule of Appellate Procedure 29(a)(2). Amici States take no position as to the jurisdictional issues. However, if this Court reaches the merits, it should affirm the district court's order

denying plaintiffs' motion for a preliminary injunction because the Act is both constitutional and an important measure to protect public safety.

In June 2023, Colorado enacted legislation to regulate certain unserialized firearm components and firearm kits that can be privately assembled into firearms, commonly known as ghost guns. *See* Colo. Rev. Stat. § 18-12-111.5. In primary part, the Act prohibits the possession or transportation of firearm frames or receivers not imprinted with a serial number. *Id.* § 18-12-111.5(1)(a), (2)(a). The Act further prohibits anyone other than a federally licensed firearm manufacturer from manufacturing a frame or receiver. *Id.* § 18-12-111.5(5)(a)(I). However, the Act permitted a person who previously purchased an unserialized frame or receiver to have the gun component imprinted with a serial number by an authorized federal firearms licensee by January 1, 2024. *Id.* § 18-12-111.5(5)(b)(I). Plaintiffs challenge the Act under the Second Amendment and seek a preliminary injunction against its enforcement.

Amici States have an interest in ensuring that laws requiring the serialization of firearms and firearm components, like the Act, remain valid and effective. Such laws assist state and local law enforcement officials in tracing firearms used in criminal activity and are thus crucial "in investigating serious crimes." *Abramski v. United States*, 573 U.S. 169, 180 (2014). As protectors of public safety and welfare, Amici States' "dominant interest" in "preventing violence . . . cannot be questioned.

It is a matter of genuine local concern." *United Auto., Aircraft & Agric. Implement Workers of Am. v. Wis. Emp. Rels. Bd.*, 351 U.S. 266, 274 (1956). States thus have a vested interest in the continued application of Colorado's law and others like it. Because the Act's provisions pass constitutional muster, the district court's order denying Plaintiffs' motion for preliminary injunction should be affirmed.

## SUMMARY OF ARGUMENT

1. In response to the recent influx of ghost guns, at least 17 jurisdictions have enacted laws regulating weapon parts kits and partially complete frames or receivers. In addition, at least 43 jurisdictions regulate firearm serial numbers in some manner, such as by preventing their obliteration. As the primary actors charged with defining and enforcing criminal laws, *see Torres v. Lynch*, 578 U.S. 452, 464 n.9 (2016), all these states recognize the indispensable value of serial numbers in investigating crimes committed with guns. These provisions, many of which have been enacted by states that otherwise afford generous gun rights, reflect an uncommon democratic consensus on how states can and should regulate firearms. Invalidating the Act under Plaintiffs' Second Amendment theory could call into question these myriad serial number regulations and undermine law enforcement efforts across the nation.

2. As Amici States know, serial numbers play a crucial role in investigating gun crimes and combating the violence engendered by prohibited persons possessing untraceable weapons. State and local law enforcement officials rely on serial

numbers to identify shooters, traffickers, and straw purchasers, and to disrupt the flood of illegal guns into their communities. Serial numbers are vital to tracing the origin and owner of a firearm. When law enforcement officials recover a gun in the aftermath of a crime, one of their first investigative steps is to submit a trace request to the federal government. And, as courts have recognized, the serial number of a firearm recovered in a crime is what makes it possible to trace and identify the firearm's owner and source. Trace information also reveals broader criminal trends, such as the average time between the purchase of a firearm and its use in a violent crime. Striking down the Act would therefore vitiate a critical tool for solving and combatting violent crime. Further, invalidating the Act will not only result in these weapons becoming increasingly accessible in Colorado, but also may result in an increased number of ghost guns flowing into other states.

3. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), does not call into question the constitutionality of the Act. Although there are many reasons why the Act passes constitutional muster, *see* Polis Brief ("Br.") 32-56, one is particularly straightforward: the Second Amendment simply does not protect the right to possess or carry unserialized guns. To begin, the Act's regulation of unserialized firearm parts falls outside the scope of the Second Amendment because unserialized firearms are not in common use by law-abiding citizens for lawful purposes. Due to their concealability, guns without serial numbers are "preferable

only to those seeking to use them for illicit activities." *United States v. Price*, 111 F.4th 392, 406 (4th Cir. 2024) (en banc). In addition, as a practical matter, the Act does not prevent law-abiding citizens from exercising their right to armed self-defense because serial number requirements do not impose restrictions on when, where, or why citizens can carry guns. Nor do serial number requirements impair the use of a gun in any way. The Act therefore does not violate the Second Amendment.

## ARGUMENT

## I.     At Least 17 Jurisdictions Directly Regulate Kits And Other Unserialized Parts, And A Vast Majority Of Jurisdictions Regulate Firearm Serial Numbers In Some Manner.

Colorado's law is one of many state legislative efforts to address the public safety risks that unserialized weapons pose. As the Supreme Court has recognized, state governments have the ability, consistent with the Second Amendment, to "experiment with reasonable firearms regulations." *See McDonald v. City of Chicago*, 561 U.S. 742, 758 (2010). And states have addressed the scourge of ghost guns in a variety of ways. But despite states' ability to tailor laws to local conditions, there is an unusually broad consensus among legislatures that unserialized weapons are a threat and should be subject to some degree of regulation.

To begin, at least 17 jurisdictions—the District of Columbia, California, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maryland, Massachusetts,

Minnesota, Nevada, New York, New Jersey, Oregon, Rhode Island, Vermont, and Washington—have targeted the possession, manufacture, and/or transfer of firearm kits and unfinished frames and receivers, and have imposed detailed marking and recordkeeping requirements on licensees.

All 17 jurisdictions target the possession of ghost guns. Three specifically define and target the possession of any "ghost gun." *See, e.g.*, D.C. Code §§ 22-4514, 7-2501.01(9B); N.Y. Penal Law § 265.01(9)-(10); R.I. Gen. Laws Ann. §§ 11-47-8(e), -2(8). Others do the same, albeit using different language.[1] And at least two states prohibit people who are otherwise banned from owning guns from also possessing an unserialized frame or receiver or similar component part. *See* Conn. Gen. Stat. Ann. § 53-206j(f); Or. Rev. Stat. § 166.250(1)(d).

At least eleven states target the ghost gun manufacturing and assembly process. For example, Connecticut has adopted a detailed scheme for regulating self-manufacturing to ensure the firearm's traceability—specifically, requiring someone to apply for a unique serial number from the state, engrave that number on

---

[1]    Cal. Penal Code §§ 16519, 16531, 29180(c), 30400; Colo. Rev. Stat. § 18-12-111.5; Del. Code Ann. tit. 11, § 1459A(b); Haw. Rev. Stat. Ann. § 134-10.2; 720 Ill. Comp. Stat. Ann. § 5/24-5.1(c), (d); Mass. Gen. Laws c.140, § 121C(b) (effective Oct. 23, 2024); Md. Code Ann., Pub. Safety § 5-703(b)(2); Minn. Stat. Ann. § 609.667(3); Nev. Rev. Stat. Ann. § 202.363; N.J. Stat. Ann. §§ 2C:39-9(k), 2C:39-3(n); Or. Rev. Stat. § 166.265(2)(a); Vt. Stat. tit. 13, §§ 4083(a)(1), (b)(1) (effective Feb. 28, 2025); Wash. Rev. Code Ann. § 9.41.326(2).

the gun's frame or receiver, and pass a background check.  *See* Conn. Gen. Stat. Ann. § 53-206j.  Similarly, numerous other states prohibit the manufacturing of an untraceable firearm or the acquisition of certain unserialized component parts for the purpose of building a firearm.[2]

Many states also target the purchase, sale, and transportation of unserialized firearm parts.  At least 15 jurisdictions criminalize the purchase, sale, or transfer of unserialized firearms and partially complete frames or receivers, either generally or when transferred to non-licensees or prohibited persons.[3]  And many states place detailed restrictions on dealers at the point of sale, using background checks, recordkeeping, and serialization requirements.[4]

---

[2]    *See, e.g.*, Cal. Penal Code §§ 16519, 16531, 29185; Colo. Rev. Stat. § 18-12-111.5(5)(a); Haw. Rev. Stat. Ann. § 134-10.2; Mass. Gen. Laws c.140, § 121C(b)-(d) (effective Oct. 23, 2024); N.J. Stat. Ann. § 2C:39-9(k); Nev. Rev. Stat. Ann. § 202.3635; Or. Rev. Stat. § 166.265(1)(a); R.I. Gen. Laws Ann. § 11-47-8(e); Vt. Stat. tit. 13, § 4083(c)(1) (effective Feb. 28, 2025); Wash. Rev. Code Ann. §§ 9.41.326(1), 9.41.190.

[3]    Cal. Penal Code § 30400; Colo. Rev. Stat. § 18-12-111.5; Conn. Gen. Stat. Ann. § 29-36a(e); Del. Code Ann. tit. 11, § 1459A; D.C. Code §§ 7-2504.08(a), 7-2505.01 to .02; Haw. Rev. Stat. § 134-10.2; 720 Ill. Comp. Stat. Ann. § 5/24-5.1(b); Md. Code Ann., Pub. Safety § 5-703(a)(1) to (2); Mass. Gen. Laws c.140, § 121C(b) (effective Oct. 23, 2024); Nev. Rev. Stat. Ann. §§ 202.3625, .364; N.J. Stat. Ann. § 2C:39-9(n); N.Y. Penal Law § 265.60-.64; Or. Rev. Stat. § 166.265(1)(a); R.I. Gen. Laws Ann. § 11-47-8(e); Vt. Stat. tit. 13, §§ 4083(a)(2), (b)(2) (effective Feb. 28, 2025).

[4]    *See, e.g.*, Cal. Penal Code §§ 29180, 29182; Colo. Rev. Stat. § 18-12-111.5(7)(a); Del. Code Ann. tit. 11, §§ 1448A, 1448B, 1459A; 720 Ill. Comp. Stat. Ann. § 5/24-5.1; Mass. Gen. Laws c.140, § 121C (effective Oct. 23, 2024); N.J. Stat.

Besides the direct regulation of unserialized firearm parts, a vast majority of jurisdictions—at least 41 states, the District of Columbia, and the Commonwealth of the Northern Mariana Islands—regulate firearm serialization in some manner. At least 29 jurisdictions prohibit the possession of firearms with obliterated serial numbers.[5] *See, e.g.*, La. Rev. Stat. § 40:1792 (providing that no person shall "possess . . . any firearm . . . from which the serial number" has been "intentionally obliterated, altered, removed, or concealed"). At least 37 jurisdictions ban the act of obliteration itself.[6] *See, e.g.*, Ala. Code § 13A-11-64(1) (providing that anyone who

Ann. § 2C:58-2; N.Y. Penal Law § 265.07; R.I. Gen. Laws Ann. § 11-47-40; Wash. Rev. Code Ann. §§ 9.41.092, .111, .113, .328; Vt. Stat. tit. 13, §§ 4084(b), (c) (effective Feb. 28, 2025).

[5]     Ala. Code § 13A-11-64; Alaska Stat. § 11-61-200(a)(6); Ariz. Rev. Stat. § 13-3102(A)(7); Ark. Code Ann. § 5-73-107; Cal. Penal Code § 23920; Colo. Rev. Stat. § 18-12-103; Del. Code Ann. tit. 11 § 1459; Fla. Stat. § 790.27; Ga. Code. Ann. § 16-9-70; 720 Ill. Comp. Stat. Ann. § 5/24-5; Ind. Code § 35-47-2-18; Ky. Rev. Stat. Ann. § 527.050; La. Rev. Stat. § 40:1792; Md. Code Ann., Pub. Safety § 5-703(b)(2); Me. Stat. tit. 17-A § 705(1)(E); Minn. Stat. Ann. § 609.667; Mo. Rev. Stat. § 571.050; Mont. Code Ann. § 45-6-326; 2016 N. Mar. I. Code § 10310; Neb. Rev. Stat. § 28-1207; Nev. Rev. Stat. Ann. § 202.277; N.J. Stat. Ann. § 2C:39-3(d); N.Y. Penal Law § 265.02(3); N.C. Gen. Stat. § 14-160.2; Ohio Rev. Code Ann. § 2923.201; 18 Pa. Cons. Stat. § 6110.2; 11 R.I. Gen. Laws § 11-47-24; S.C. Code. Ann. § 16-23-30(C); S.D. Codified Laws § 22-14-5.

[6]     Ala. Code § 13A-11-64; Alaska Stat. § 11-61-200(a)(5); Ariz. Rev. Stat. § 13-3102(A)(7); Ark. Code Ann. § 5-73-106; Cal. Penal Code § 23900; Colo. Rev. Stat. § 18-12-104; Conn. Gen. Stat. § 29-36; D.C. Code § 22-4512; Fla. Stat. § 790.27; Haw. Rev. Stat. § 134-10; Idaho Code § 18-2410; 720 Ill. Comp. Stat. Ann. § 5/24-5; Ind. Code § 35-47-2-18; Kan. Stat. Ann. § 21-6306; Ky. Rev. Stat. Ann. § 527.030; Mass. Gen. Laws c.269, § 11C; Me. Stat. tit. 17-A § 705(1)(E); Mich. Comp. Laws § 750.230; Minn. Stat. Ann. § 609.667; Mo. Rev. Stat.

"[c]hanges, alters, removes, or obliterates the [serial number] of any firearm" is guilty of a felony).  And at least one of the remaining eight states without a specific serial number regulation has a generic obliteration statute that applies to all manufactured products.[7]  Similarly, federal law prohibits the transportation or possession of guns with obliterated serial numbers.  18 U.S.C. § 922(k).

The broad consensus among the states—some of which otherwise have much more permissive gun regulations—supports the conclusion that serial number regulations are "constitutionally permissible."  *Bruen*, 142 S. Ct. at 2162 (Roberts, C.J. & Kavanaugh, J., concurring); *see also id.* at 2161 (noting that the "may-issue" licensing laws invalidated by *Bruen* were "unusual" and "outlier[s]").

## II.  The Act Protects The Public From Violent Crimes Committed With Untraceable Firearms, And The Harms Of Invalidating The Act Would Extend Beyond Colorado.

### A.  Serial Number Regulations Are Crucial To Solving Crime.

The ubiquity of serial number regulations makes sense given the critical law enforcement purposes they serve.  As the primary actors charged with "defining and

---

§ 571.045; Mont. Code Ann. § 45-6-326; 2016 N. Mar. I. Code § 10310; Neb. Rev. Stat. § 28-1208; Nev. Rev. Stat. Ann. § 202.277; N.H. Rev. Stat. Ann. § 159:13; N.J. Stat. Ann. § 2C:39-9(e); N.Y. Penal Law § 265.10(6); N.C. Gen. Stat. § 14-160.2; N.D. Cent. Code § 62.1-03-05; Ohio Rev. Code Ann. § 2923.201; Okla. Stat. tit. 21 § 1550; Or. Rev. Stat. § 166.450; 18 Pa. Cons. Stat. § 6117; 11 R.I. Gen. Laws § 11-47-24; Utah Code Ann. § 76-10-522; Va. Code Ann. § 18.2-311.1; Wash. Rev. Code Ann. § 9.41.140.

[7]    Tex. Penal Code Ann. § 31.11.

enforcing criminal laws," *Torres*, 578 U.S. at 464 n.9 (quotation mark omitted), states are responsible for addressing the violence associated with firearms and firearm kits.

For law enforcement officials investigating a gun crime, "Step One" after recovering a gun is to determine where it came from, or in other words, to "trace" it. *See* Jeanne Laskas, *Inside the Federal Bureau Of Way Too Many Guns*, GQ (Aug. 30, 2016), https://tinyurl.com/4c9y3neb.  Serial numbers are the linchpin of this effort.  Once officials determine the gun's serial number, they relay that information to the ATF's National Tracing Center ("NTC").  *Id.*  The NTC possesses serial numbers and other identifying information for guns manufactured in or imported into the United States.  Melissa Block, *The Low-Tech Way Guns Get Traced*, NPR (May 20, 2013), https://tinyurl.com/yypwxe2a.  Using their records and the serial numbers they receive from local, state, and federal law enforcement, "NTC is able [to] trace [firearms] through the wholesale and resale distribution chain to [their] first retail purchaser."  Bureau of Alcohol, Tobacco, Firearms & Explosives, Nat'l Tracing Ctr., *Fact Sheet* (Jun. 2020), https://tinyurl.com/4wkxxcsk.

Trace information, which depends entirely on a firearm having a serial number, assists law enforcement in solving individual crimes.  It "can identify possible suspects or traffickers and link them to specific firearms found in criminal investigations."  *Id.*  The "jackpot" of information that a trace reveals "could help

10

solve a murder case, or exonerate [someone innocent] on death row or, as happens frequently, open unexpected investigative leads." Laskas, *supra*. "[T]races spark leads," and although they do not "always lead directly to a perpetrator," investigators can "interview a gun's buyer to see whom he or she gave or sold it to and then follow the chain of custody." Brian Freskos, *How a Gun Trace Works*, Trace (Jul. 8, 2016), https://tinyurl.com/2t4capet.

Beyond solving individual cases, trace data based on firearm serial numbers informs law enforcement about broader statistics in gun trafficking and violent crime. It helps detect "international trafficking patterns" as well as "local trends in the sources and types of crime guns." *Fact Sheet*, *supra*. The data also allows officials to identify repeat straw purchasers and disrupt the flow of illegal guns from traffickers into local communities. *See, e.g.*, Dep't of the Treasury, Bureau of Alcohol, Tobacco & Firearms, *Following the Gun: Enforcing Federal Laws Against Firearms Traffickers* 37-38 (Jun. 2000) (providing examples), https://tinyurl.com/4ptjpjpp. And it provides rich "'time-to-crime' statistics which measure the time between a firearm's initial retail sale and its recovery in a crime." *United States v. Marzzarella*, 614 F.3d 85, 100 (3d Cir. 2010). Time-to-crime data enables agencies and the public to decipher overarching trends in violent crime, like the increased rates of gun violence that the United States has experienced in the recent past. *See* John Gramlich, *What the Data Says About Gun Deaths in the U.S.*,

Pew Rsch. Ctr. (Feb. 3, 2022), https://tinyurl.com/yt5vx6y4.  Indeed, as gun violence has increased across the country, so have trace requests.  In 1995, ATF processed "fewer than 80,000" trace requests.  Freskos, *supra*.  By 2015, that number was 373,000.  *Id.*  And last year, in 2023, the agency processed over 645,000 requests.  Bureau of Alcohol, Tobacco, Firearms & Explosives, *Fact Sheet eTrace* (April 2024), https://tinyurl.com/bdh7aazv.

Finally, although ATF usually processes routine trace requests within seven to ten business days, in urgent situations it can determine who originally purchased a retail firearm within twenty-four hours, and oftentimes, within hours or minutes, thus aiding law enforcement officials conducting sensitive and urgent investigations.  Zak Dahlheimer, *Behind-the-scenes Look at the Bureau of Alcohol, Tobacco, Firearms and Explosives National Tracing Center*, WTKR (Oct. 13, 2021), https://tinyurl.com/nhnxcuy4.  Urgent traces are especially critical in the wake of mass murder and public violence, when officials, victims, and citizens demand immediate information about how the shooters acquired their firearms and whether there continues to be a threat of violence.  *See* Block, *supra* (describing how ATF conducted urgent traces after the Gabby Giffords and Newtown shootings); Sari Horwitz, *Guns Used in San Bernardino Shooting Were Purchased Legally from Dealers*, Wash. Post (Dec. 3, 2015), https://tinyurl.com/5bsxsz9k (noting that ATF

conducted an urgent trace on the firearms used in the San Bernardino shooting "within two hours of their recovery").

In sum, laws requiring the serialization of firearms and firearm components provide law enforcement officials with one of the most important tools to investigate gun crimes. Invalidating such laws would "strike[] a profound blow to the basic obligation of government to ensure the safety of the governed." *Bianchi v. Brown*, 111 F.4th 438, 442 (4th Cir. Aug. 6, 2024) (en banc).

**B.    Invalidating The Act Will Cause An Increased Number Of Untraceable Firearms To Flood Colorado And Flow Into Other States.**

Because of law enforcement's reliance on serial numbers to trace violent crime, it is no surprise that guns without serial numbers are "preferable . . . to those seeking to use them for illicit activities." *Price*, 111 F.4th at 406; *see also Montgomery v. Rosenblum*, No. 3:24-cv-01273, 2024 WL 3887248, at *4 (D. Or. Aug. 20, 2024) (noting that "unserialized and undetectable firearms are increasingly used for distinctly unlawful purposes"). And not only are these untraceable weapons used for illicit purposes, but they are also often wielded by those legally prohibited from owning firearms due to criminal histories or disqualifying backgrounds—like felons and children. For instance, in 2019, a man with multiple felony convictions used a self-made semi-automatic rifle, assembled from parts, to kill one police officer and injure two others. Andrew Blankstein & Eric Leonard, *Ex-con who killed*

13

*California cop used homemade 'ghost gun,'* NBC News (Aug. 15, 2019), https://nbcnews.to/3vLC09U.  In 2022, a teenager shot a 15-year-old boy in a school bathroom with a ghost gun purchased online.  Stephanie Ramirez, *Mother of Magruder shooting victim sues school, county*, Fox 5 Wash. D.C. (Dec. 1, 2022), http://tinyurl.com/bdetpps6.

The data tell a similar story.  In Philadelphia, roughly half of all people arrested in possession of a ghost gun from 2022 through mid-2024 had been banned from possessing a gun because of disqualifying convictions, including violent felonies.[8]  Similarly, in California, ghost guns accounted for 25% to 50% of firearms recovered at crime scenes from 2020 to 2021, with the "vast majority" of those belonging to prohibited persons.  Glenn Thrush, *'Ghost Guns': Firearm Kits Bought Online Fuel Epidemic of Violence*, New York Times (Nov. 14, 2021), https://tinyurl.com/52d73wam.  And in New Jersey, of 78 unique possessors of ghost guns identified so far in 2024, 81% had prior criminal histories, and 58% had prior felony convictions.  Additionally, 51% of the possessors had prior gun arrests, and 17% were previously involved in shootings.  Some of these untraceable guns were also used in multiple crimes, with 15 of the guns recovered so far in 2024 used in 26

---

[8]    Data on file with the Pennsylvania Office of the Attorney General (current as of June 11, 2024).

shootings.[9]  The Act aims to keep these untraceable weapons out of the hands of those who seek to use them for illicit activities.

Despite state efforts, the number of unserialized firearms has grown exponentially and localities have continued to see self-assembled, unserialized firearms flow into their communities.  Over the last several years, federal recovery numbers for unserialized guns have soared, jumping 15-fold between 2016 and 2022.  *See* Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24652, 24656 (Apr. 26, 2022); *see also* Press Release, Off. of Pub. Affs., U.S. Dep't of Just., *Fact Sheet: Update on Justice Department's Ongoing Efforts to Tackle Gun Violence* (Jun. 14, 2023), http://tinyurl.com/aevcx77t.  And ghost gun kits are increasingly accessible.  As of 2022, there were about 129 companies selling weapon parts kits or partially complete frames or receivers in 27 states across the country.  *See* 87 Fed. Reg. at 24718; NPF Report 2.  Weapon parts kits are also affordable and easy to assemble, with some partial kits costing around $100 or less and requiring only basic tools and instructions to build a functional firearm.  *See, e.g.*, *Stealth Arms Parts & Accessories*, JSDSupply, https://jsdsupply.com/category/glock/ (last visited Aug. 22, 2024).

---

[9]      Data on file with New Jersey State Police (current as of June 28, 2024).

This widespread access to ghost guns has enabled individuals to circumvent state gun laws by bringing unserialized weapons into the very states that have been trying to keep them out.  For example, New Jersey has regulated unserialized firearms since at least 2018.  But at the same time, the state has seen large increases in the number of ghost guns recovered at crime scenes, from 55 guns in 2019 to 101 in 2020, 257 in 2021, and 428 in 2022 respectively.[10]  Similarly, even though California has attempted to curb unserialized guns since at least 2016, as of 2019, these weapons accounted for nearly 30% of all guns recovered in the state by ATF. NPF Report 5.  According to local authorities, ghost guns proliferate despite state efforts to regulate them because firearms are easily trafficked across the state borders.  *See* Bill Whitaker, *Ghost Guns: The build-it-yourself firearms that skirt most federal gun laws and are virtually untraceable*, CBS News (May 10, 2020), https://cbsn.ws/3Li5zoM (interviewing the Los Angeles County Sheriff).  Striking down the Act could result in these dangerous, untraceable weapons becoming increasingly accessible in not only Colorado, but also other states.

In short, the Act buttresses the efforts of a significant number of jurisdictions to curb gun crime.  The Act ensures that states can trace these weapons and that they are not bought by criminals or children as a means of evading state or federal law.

---

[10]     Data on file with New Jersey State Police (current as of Dec. 23, 2023).

## III.    The Act Is Consistent With The Second Amendment.

Although there are myriad reasons why Colorado's law passes constitutional muster, *see* Polis Br. 32-56, this Court can affirm on one simple ground: the Constitution does not protect the right to possess or carry unserialized guns.  As the Supreme Court explained in *Bruen*, the Second Amendment does not protect the "right to keep and carry *any weapon* whatsoever in *any manner* whatsoever and for *whatever purpose*."  *Bruen*, 142 S. Ct. at 2128 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008)) (emphasis added).  The Second Amendment protects the right to keep and bear arms that are "'in common use' today" for lawful purposes like self-defense, *id.* at 2134—not those that are "dangerous and unusual" or that are *not* commonly used for lawful purposes, *id.* at 2128 (quoting *Heller*, 554 U.S. at 627).  *See also Heller*, 554 U.S. at 624 (explaining that the Second Amendment protects only those arms "'in common use at the time' for lawful purposes like self-defense").  Guns without serial numbers are dangerous, unusual, and not commonly used by law-abiding citizens for self-defense—which places them outside of the scope of the Second Amendment.

Guns without serial numbers, as a class, are not commonly used by law-abiding citizens for lawful purposes today.  *See Price*, 111 F.4th at 408 (concluding that guns without serial numbers are outside the scope of the Second Amendment).  As detailed above, untraceable weapons are increasingly used for violent crime,

often by those prohibited from owning firearms.  The growth in ghost-gun usage for illicit purposes has also increased exponentially, from 1,758 ghost guns recovered by law enforcement in 2016 to 25,785 ghost guns recovered in 2022.  87 Fed. Reg. at 24656.

The explosion of ghost-gun use in crimes is unsurprising, given that "a gun that is impossible to trace has greater value in the underground market that supplies criminals."  Philip J. Cook et al., *Some Sources of Crime Guns in Chicago: Dirty Dealers, Straw Purchasers, and Traffickers*, 104 J. Crim. L. & Criminology 717, 750 (2015).  Guns without serial numbers thus have "particular value" to those who break the law.  *Marzzarella*, 614 F.3d at 98; *see also Price*, 111 F.4th at 406 (noting that unserialized firearms are "preferable only to those seeking to use them for illicit activities").  And conversely, "[b]ecause a firearm with a serial number is equally effective as a firearm without one," a law-abiding citizen would not prefer an unmarked firearm to a serialized one.  *Marzzarella*, 614 F.3d at 95.  There is no "common-sense reason for a law-abiding citizen to want to use a firearm [without a] serial number for self-defense."  *Price*, 111 F.4th at 408.  Accordingly, ghost guns do not receive Second Amendment protection.

Moreover, as a practical matter, preventing the use of these dangerous and unusual firearms does not prevent law-abiding citizens from exercising their right to armed self-defense, which is the "central component" of the Second Amendment.

*Bruen*, 142 S. Ct. at 2133 (quoting *Heller*, 554 U.S. at 599) (emphasis omitted);

Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense*,

56 UCLA L. Rev. 1443, 1549 (2009).  Notably, the Act does not *ban* transporting or

possessing unfinished frames or receivers, but merely requires that these firearm

parts be serialized, effective January 1, 2024.  Unlike the proper-cause requirement

in *Bruen*, which "prevent[ed] law-abiding citizens with ordinary self-defense needs

from exercising their right to keep and bear arms," 142 S. Ct.  at 2156, serial number

requirements do not impose restrictions on when, where, or why citizens can carry

guns.  Nor do serial number requirements "impair the use or functioning of a

weapon."  *Marzzarella*, 614 F.3d at 94.  In other words, serial number laws do not

prevent law-abiding citizens from using arms to protect themselves, as the en banc

Fourth Circuit and numerous district courts post-*Bruen* have overwhelmingly

reasoned.  *See, e.g.*, *Price*, 111 F.4th at 408; *Montgomery*, 2024 WL 3887248, at *6;

*New York v. Arm or Ally, LLC*, No. 22-cv-6124, 2024 WL 756474, at *13 (S.D.N.Y.

Feb. 23, 2024); *United States v. Trujillo*, 670 F. Supp. 3d 1235, 1243 (D.N.M. 2023);

*United States v. Serrano*, 651 F. Supp. 3d 1192, 1210 (S.D. Cal. 2023); *United States

v. Reyna*, No. 3:21-cr-41, 2022 WL 17714376, at *5 (N.D. Ind. Dec. 15, 2022);

*United States v. Holton,* 639 F. Supp. 3d 704, 710-11 (N.D. Tex. 2022). Colorado's

law therefore does not implicate the Second Amendment right to bear arms.

## CONCLUSION

This Court should affirm the district court's order.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of
Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

/s/ Marcella E. Coburn
MARCELLA E. COBURN
Assistant Attorney General

ANNE A. DENG
Assistant Attorney General
Office of the Solicitor General

Office of the Attorney General
  for the District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 674-0753
marcella.coburn@dc.gov

September 2024

On behalf of:

KRISTIN K. MAYES
*Attorney General*
State of Arizona

ROB BONTA
*Attorney General*
State of California

WILLIAM TONG
*Attorney General*
State of Connecticut

KATHLEEN JENNINGS
*Attorney General*
State of Delaware

ANNE E. LOPEZ
*Attorney General*
State of Hawaii

KWAME RAOUL
*Attorney General*
State of Illinois

AARON M. FREY
*Attorney General*
State of Maine

ANTHONY G. BROWN
*Attorney General*
State of Maryland

ANDREA CAMPBELL
*Attorney General*
Commonwealth of Massachusetts

DANA NESSEL
*Attorney General*
State of Michigan

KEITH ELLISON
*Attorney General*
State of Minnesota

AARON D. FORD
*Attorney General*
State of Nevada

MATTHEW J. PLATKIN
*Attorney General*
State of New Jersey

LETITIA JAMES
*Attorney General*
State of New York

ELLEN F. ROSENBLUM
*Attorney General*
State of Oregon

MICHELLE A. HENRY
*Attorney General*
Commonwealth of Pennsylvania

PETER F. NERONHA
*Attorney General*
State of Rhode Island

ROBERT W. FERGUSON
*Attorney General*
State of Washington

CHARITY R. CLARK
*Attorney General*
State of Vermont

JOSHUA L. KAUL
*Attorney General*
State of Wisconsin

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2024, I electronically filed the foregoing amicus brief with the Clerk of the Court for the U.S. Court of Appeals for the Tenth Circuit using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Marcella E. Coburn
MARCELLA E. COBURN

## CERTIFICATE OF COMPLIANCE

I further certify that this brief complies with the type-volume limitation imposed by Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B), because the brief was contains 4,756 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ Marcella E. Coburn
MARCELLA E. COBURN