**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**April 23, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

NATIONAL ASSOCIATION FOR GUN
RIGHTS; CHRISTOPHER JAMES
HIESTAND RICHARDSON; MAX
EDWIN SCHLOSSER; JOHN MARK
HOWARD; ROCKY MOUNTAIN GUN
OWNERS,

     Plaintiffs - Appellants,

v.

JARED S. POLIS, in his official capacity
as Governor of the State of Colorado,

     Defendant - Appellee.

------------------------------

DISTRICT OF COLUMBIA; ARIZONA;
CALIFORNIA; CONNECTICUT;
DELAWARE; HAWAII; ILLINOIS;
MAINE; MARYLAND;
MASSACHUSETTS; MICHIGAN;
MINNESOTA; NEVADA; NEW JERSEY;
NEW YORK; OREGON;
PENNSYLVANIA; RHODE ISLAND;
VERMONT; WASHINGTON;
WISCONSIN; BRADY CENTER TO
PREVENT GUN VIOLENCE;
EVERYTOWN FOR GUN SAFETY
SUPPORT FUND; GIFFORDS LAW
CENTER TO PREVENT GUN
VIOLENCE,

     Amici Curiae.

No. 24-1209

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:24-CV-00001-GPG-STV)**

_____

Barry K. Arrington, Arrington Law Firm, Wheat Ridge, Colorado for Plaintiffs-Appellants National Association for Gun Rights, Christopher James Hiestand Richardson, Max Edwin Schlosser, John Mark Howard, and Rocky Mountain Gun Owners.

Shannon Wells Stevenson (Philip J. Weiser, Attorney General, Michael T. Kotlarczyk, Assistant Solicitor General, Pat Sayas, Senior Assistant Attorney General, Kit Spalding, Senior Assistant Attorney General, and Sam Wolter, Assistant Attorney General, on the brief), Colorado Attorney General's Office, Colorado Department of Law, Denver, Colorado, for Defendant-Appellee Jared S. Polis, in his official capacity as Governor of the State of Colorado.

Brian L. Schwalb, Attorney General for the District of Columbia, Caroline S. Van Zile, Solicitor General, Ashwin P. Phatak, Principal Deputy Solicitor General, Marcella E. Coburn, Assistant Attorney General, and Anne A. Deng, Assistant Attorney General, Office of the Attorney General, Washington, D.C., filed an Amici Curiae brief for The District of Columbia, Arizona, California, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, and Wisconsin, in support of Appellee.

Kathleen R. Hartnett, Cooley LLP, San Francisco, California, and Adam M. Katz, Cooley LLP, Boston, Massachusetts, filed an Amici Curiae brief for Brady Center to Prevent Gun Violence, Everytown for Gun Safety Support Fund, and Giffords Law Center to Prevent Gun Violence, in support of Appellee.

_____

Before **EID**, **KELLY**, and **CARSON**, Circuit Judges.

_____

**CARSON**, Circuit Judge.

_____

In June 2023, Colorado enacted a law that prohibits the purchase, sale, transfer, and possession of unserialized firearms, firearm frames or receivers, and

2

firearm parts kits.  The law also prohibits the manufacture of firearm frames or receivers by most Coloradans.  Individual Plaintiffs and two Associations representing Colorado gun owners sued, alleging that this law infringes on their Second Amendment rights.

The district court determined that it could review one of Plaintiffs' challenges to the Colorado law, but that the others were not permitted under Article III.  For the challenge it reviewed, the district court determined that the Colorado law imposes a presumptively constitutional condition or qualification on the commercial sale of firearms that does not implicate the plain text of the Second Amendment and denied Plaintiffs' motion for a preliminary injunction.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

I.

In June 2023, Colorado enacted Senate Bill 23-279—codified as Colo. Rev. Stat. ("C.R.S.") § 18-12-111.5 and effective January 1, 2024. The statute prohibits the possession, purchase, sale, transfer, and transportation of unserialized firearms, firearm frames or receivers, and firearm parts kits.  It also prohibits the manufacture of firearm

frames and receivers.[1]  Violating the statute is a class 1 misdemeanor and a class 5 felony

on a second or subsequent offense.  C.R.S. § 18-12-111.5(6)(a)–(b).

Three Individual Plaintiffs—Christopher Richardson, John Howard, and Max

Schlosser—and two nonprofit Associational Plaintiffs—National Association for Gun

Rights ("NAGR") and Rocky Mountain Gun Owners ("RMGO")—sued the state for

violating their Second Amendment right to keep and bear arms.  The Individual Plaintiffs

purchased or owned firearm parts kits from Polymer80, Inc., a manufacturer that sells

unfinished frames, receivers, and firearm parts for individuals to assemble into privately

made firearms ("PMFs").  All three Individual Plaintiffs are members of both NAGR and

RMGO.[2]  The associations represent gun-owners' rights in Colorado.[3]

On January 15, 2024, Plaintiffs moved to preliminarily enjoin the enforcement of

the Colorado statute.  The district court denied the motion and Plaintiffs appealed.

II.

Before assessing Plaintiffs' request for a preliminary injunction, we must

determine whether they have standing to sue.  To establish standing, "plaintiff[s] must

---

[1] Plaintiffs contend, and the State does not dispute, that a frame or receiver is essential to building a firearm.  Thus, according to Plaintiffs, the prohibition on making firearm frames and receivers is effectively a ban on privately making firearms.

[2] Plaintiffs Richardson and Schlosser state in their declarations that they are members of RMGO but do not mention their membership with NAGR.  Each later testified during a March 14, 2024 preliminary injunction hearing that he was a member of both associations.

[3] Associational Plaintiffs NAGR and RMGO also allege they are acting on behalf of twenty-two other members similarly situated to the Individual Plaintiffs.

demonstrate (i) that [they have] suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." FDA v. All. for Hippocratic Med., 602 U.S. 367, 380 (2024) (citing Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).

The district court split its standing analysis into three categories: (1) claims based on Plaintiffs' continued possession of unserialized firearm parts kits ("possession-prohibition claims"); (2) claims based on Plaintiffs' desire to purchase additional unserialized firearm parts kits ("acquisition-prohibition claims"); and (3) claims based on Plaintiffs' desire to manufacture frames or receivers to create PMFs ("manufacturing-prohibition claims").[4] It concluded that (1) Plaintiff Richardson had standing to pursue injunctive relief based on his continued possession of unserialized firearm parts kits, (2) Plaintiffs' claims based on their desire to purchase unserialized firearm parts kits in the future were not ripe because of an overlapping federal regulation, and (3) Plaintiffs lacked standing to challenge the manufacturing prohibition because it did not cover their desired conduct.[5] The district court's conclusions as to NAGR and

---

[4] The district court referred to these categories as "(1) past purchases of frames or receivers to create a PMF; (2) future purchases of frames or receivers to create a PMF; and (3) 3D-printed frames or receivers to create a PMF."

[5] The district court also concluded that Plaintiffs had standing for claims for retrospective relief based on unserialized firearm parts kits and PMFs that they destroyed or serialized to comply with the Colorado statute. Plaintiffs' motion for a preliminary injunction seeks prospective relief only, so we need not discuss standing for past injuries.

RMGO's standing mirrored its conclusions as to Individual Plaintiffs' standing. We review these standing determinations de novo. Bertels v. Farm Bureau Prop. & Cas. Ins. Co., 123 F.4th 1068, 1073 (10th Cir. 2024) (citing Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC, 21 F.4th 1229, 1241 (10th Cir. 2021)).

A.

First, we review whether the Individual Plaintiffs have established an actual or imminent "injury in fact" for each claim. Lujan, 504 U.S. at 560. Injunctive relief is appropriate when the plaintiff suffers a continuing injury or when he is otherwise "under a real and immediate threat of being injured in the future." Colo. Cross Disability Coal. v. Abercrombie & Fitch Co., 765 F.3d 1205, 1211 (10th Cir. 2014) (citing Tandy v. City of Wichita, 380 F.3d 1277, 1283 (10th Cir. 2004)). For pre-enforcement challenges, this means that the plaintiff alleges "an intention to engage in a course of conduct" (1) that is "arguably affected with a constitutional interest," (2) is "proscribed by a statute," and (3) "there exists a credible threat of prosecution thereunder." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159 (2014) (quoting Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289, 298 (1979)).

1.

Plaintiffs' possession-prohibition claims allege that Colorado's statute injures them because they want to engage in conduct—possessing unserialized firearm parts kits and PMFs—that is protected by the Second Amendment but prohibited under C.R.S. §§ 18-12-111.5(1)(a) and 18-12-111.5(3)(a). The district court determined that Plaintiff Richardson suffered an injury in fact because he owns unserialized firearm parts kits that

6

he cannot possess in Colorado.  The district court further concluded that Plaintiffs Schlosser and Howard, who no longer possess any unserialized firearm parts kits or PMFs, could not show an injury in fact for prospective relief because they could not show a "credible threat of prosecution" under Colorado's law.

We agree with the district court that Plaintiff Richardson has shown an injury in fact.  He intends a course of conduct "arguably affected with a constitutional interest"— that is, possessing unserialized firearm parts kits and PMFs.  See Babbitt, 442 U.S. at 298.  For standing purposes, whether the Second Amendment *actually* protects this conduct does not matter.   Instead, we "assume a plaintiff's claims have 'legal validity'" and do not "open the door to merits considerations."  Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs., 121 F.4th 1374, 1378 (10th Cir. 2024) (quoting Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1093 (10th Cir. 2006)).  The Colorado statute also proscribes Plaintiff Richardson's conduct.  Under the statute, a "person shall not knowingly possess . . . an [unserialized] unfinished frame or receiver," C.R.S. § 18-12-111.5(1)(a), or "a[n] [unserialized] firearm or frame or receiver of a firearm."  Id. § 18-12-111.5(3)(a).  Finally, Plaintiff Richardson faces a credible threat of prosecution because "the defendant 'has not disavowed any intention of invoking' the statute against" him.  See Rocky Mountain Gun Owners v. Polis, 121 F.4th 96, 110 (10th Cir. 2024) (quoting Babbitt, 442 U.S. at 302).

Although Plaintiffs Schlosser and Howard have also expressed an intent to possess unserialized firearm parts kits and PMFs, the district court determined that they have not shown an injury in fact sufficient for injunctive relief because they no longer possess

7

these items.  At this litigation stage, "[i]f at least one plaintiff has standing, the suit may proceed."  Biden v. Nebraska, 600 U.S. 477, 489 (2023) (citing Rumsfeld v. F. for Acad. and Institutional Rts., Inc., 547 U.S. 47, 52, n.2 (2006)).  Because we agree that Plaintiff Richardson has shown an injury in fact sufficient to seek injunctive relief, we need not address the district court's determinations for the other Individual Plaintiffs.

2.

Plaintiffs' acquisition-prohibition claims allege that the Colorado statute's prohibitions on the purchase, sale, or transfer of unserialized firearm parts kits, see C.R.S. § 18-12-111.5(2)(a), impinge on their Second Amendment rights.  Plaintiffs' claims satisfy the injury-in-fact requirement for reasons much like those discussed above. Plaintiffs intend to purchase unserialized firearm parts kits.  The same constitutional interest protects this conduct, the Colorado statute proscribes this conduct, see C.R.S. § 18-12-111.5(2)(a) ("[a] person shall not knowingly . . . purchase an unfinished frame or receiver"), and Plaintiffs face a credible threat of prosecution because Colorado has not disavowed enforcement of this provision.

The district court did not assess whether Plaintiffs had shown an injury in fact sufficient to pursue these claims because it concluded that they were not ripe.  It based this conclusion on an April 2022 Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Final Rule ("ATF Final Rule") that also requires manufacturers to serialize their firearm parts kits before sale.  See Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24652, 24654 (Apr. 26, 2022) (codified as 27 C.F.R. pts. 447, 478, and 479) ("The rule requires persons who engage in the business of dealing in

weapon and frame or receiver parts kits defined as firearms to . . . mark the frames or receivers within such kits with serial numbers . . . .") According to the district court, the ATF Final Rule rendered Plaintiffs' challenge unripe because "[r]egardless of what Colorado law dictates, federal law precludes Plaintiffs from lawfully carrying out their intended activities." This was error.

The ripeness doctrine "prevent[s] the premature adjudication of abstract claims" by ensuring federal courts hear only active "Cases" or "Controversies." United States v. Cabral, 926 F.3d 687, 693 (10th Cir. 2019) (quoting Tex. Brine Co. v. Occidental Chem. Corp., 879 F.3d 1224, 1229 (10th Cir. 2018)). Standing and ripeness "substantially overlap in many cases," S. Utah Wilderness All. v. Palma, 707 F.3d 1143, 1157 (10th Cir. 2013) (citing Morgan v. McCotter, 365 F.3d 882, 887 (10th Cir. 2004)), but "important differences" exist between these doctrines. Id. The standing doctrine focuses on "whether these persons are the proper *parties* to bring the suit," id. (quoting Wilderness Soc. v. Alcock, 83 F.3d 386, 390 (11th Cir. 1996)), while the ripeness doctrine "addresses a *timing* question: *when* in time is it appropriate for a court to take up the asserted claim." United States v. Sup. Ct. of N.M., 839 F.3d 888, 903 (10th Cir. 2016) (quoting Kan. Jud. Rev. v. Stout, 519 F.3d 1107, 1116 (10th Cir. 2008)).

When the district court issued its order, the ATF Final Rule awaited Supreme Court review but remained in force. On appeal, the State argues that the district court correctly dismissed Plaintiffs' acquisition-prohibition claims as unripe because the claims were contingent on the Supreme Court ultimately enjoining the ATF Final Rule. The problem with this argument, and the district court's analysis, is that each assumes this

contingency without examining it.  Indeed, in the end, the Supreme Court did not enjoin the ATF Final Rule, see Bondi v. VanDerStok, 604 U.S. 458 (2025), but this does not automatically terminate Plaintiffs' claims.[6]  Instead, the (previous) contingency and (present) viability of these claims depend on whether this Court can provide relief given the ATF Final Rule.  This is a question of redressability that the district court should have analyzed and that we examine below.[7]

3.

Plaintiffs' manufacturing-prohibition claims allege that the Colorado statute unconstitutionally prohibits the private manufacturing of firearms.  The Colorado statute states: "A person shall not manufacture or cause to be manufactured, including through the use of a three-dimensional printer, a frame or receiver of a firearm."  C.R.S. § 18-12-111.5(5)(a)(I).  The statute provides an exception for federally licensed firearm manufacturers.  Id. at (5)(a)(II).  Plaintiffs claim that this provision prevents them from purchasing firearm parts kits (whether serialized or not) and building these firearm parts kits into PMFs.

---

[6] The Supreme Court affirmed the facial validity of the ATF Final Rule under the Gun Control Act of 1968 but did not address the constitutionality of the ATF's regulation of firearm parts kits.  Thus, the Supreme Court did not address the constitutional challenges that Plaintiffs raise here.

[7] To be fair, the district court and the parties did not have the benefit of our recent decisions analyzing the effect of independent, unchallenged restrictions on the plaintiffs' conduct under the redressability prong of Article III standing.  See We the Patriots, Inc. v. Grisham, 119 F.4th 1253, 1259–61 (10th Cir. 2024); see also Rocky Mountain Gun Owners v. Polis, 121 F.4th 96, 111 (10th Cir. 2024).

The district court determined that the manufacturing prohibition did not reach

Plaintiffs' desired conduct because the statute limits its prohibition to three-dimensional

(3D) printing of frames or receivers.[8]  It found that no Plaintiff had access to 3D printing,

so they had not alleged an immediate, non-hypothetical injury sufficient for Article III

standing.  On appeal, Plaintiffs do not dispute the district court's finding that they lack

access to 3D printing, rather, they argue that their desire to build finished frames from

firearm parts kits constitutes "manufacturing" prohibited by the statute.

We review de novo questions of statutory interpretation.  In re Taylor, 899 F.3d

1126, 1129 (10th Cir. 2018) (citing United States v. Theis, 853 F.3d 1178, 1181 (10th

Cir. 2017)).  When interpreting state law, we must "endeavor to predict how [the highest

state court] would rule."  Nelson v. United States, 915 F.3d 1243, 1248 (10th Cir. 2019)

(quoting Johnson v. Riddle, 305 F.3d 1107, 1118 (10th Cir. 2002)).  Colorado courts first

consider "the statute's plain language, giving its words and phrases their plain and

ordinary meanings" to determine legislative intent.  People Int. of G.S.S., 462 P.3d 592,

595 (Colo. 2020) (citing People v. Iannicelli, 449 P.3d 387, 391 (Colo. 2019)).  Under

Colorado law, we must read statutory language as a whole and "give consistent,

harmonious, and sensible effect to all of" the statute's parts.  Id. (citing Iannicelli, 449

P.3d at 391).  If the statute's plain language is unambiguous, the inquiry into legislative

intent ends.  Godinez v. Williams, 544 P.3d 1233, 1237 (Colo. 2024) (citing McCoy v.

---

[8] The district court acknowledged that the provision could encompass forms of manufacturing other than 3D printing but found no evidence that any Plaintiff desired to manufacture a frame or receiver using another method of manufacturing.

People, 442 P.3d 379, 389 (Colo. 2019)).  Otherwise, the court "may look to 'other aids to statutory construction, including the consequences of a given construction, the end to be achieved by the statute, and the statute's legislative history.'"  Id. (quoting McCoy, 442 P.3d at 389).

The Colorado statute prohibits "manufactur[ing] . . . a frame or receiver of a firearm."  C.R.S. § 18-12-111.5(5)(a)(I).  Plaintiffs wish to create PMFs from firearm parts kits.  To do this, they first need to build a finished frame or receiver of a firearm from an unfinished frame or receiver.  The question is whether this activity constitutes "manufacturing" under the statute.   Plaintiffs argue that building a finished frame or receiver from an unfinished one is akin to creating (and thereby manufacturing) that finished frame.  The State, meanwhile, compares this process to assembling a model airplane from a kit and argues that we do not ordinarily think of assembling the kit as manufacturing the model airplane.

Zeroing in on the word "manufacture" does not answer this question.  Although some definitions could encompass Plaintiffs' intended conduct, see, e.g., Manufacture, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/manufacture (last visited April 10, 2026) ("to make into a product suitable for use"), others suggest that manufacturing ordinarily involves processing raw materials or using industrial machinery.  See, e.g., Manufacture, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2011) ("[t]o make or process from raw material, esp. by means of a large-scale industrial operation.")

Zooming out and reviewing the statute as a whole, however, demonstrates that the Colorado legislature views Plaintiffs' intended conduct as more akin to the State's model airplane "assembly" than to Plaintiffs' "creating" or "manufacturing."  Consider the statute's definition of unfinished frame or receiver:

> "Unfinished frame or receiver" means any forging, casting, printing, extrusion, machined body, or similar article that has reached a **stage in manufacture** when it may **readily be completed, assembled, or converted** to be used as the frame or receiver . . . or that is marketed or sold . . . to become or be used as the frame or receiver . . . **once completed, assembled, or converted**.

C.R.S. § 18-12-101(1)(z) (emphasis added).  The first part of this definition describes Plaintiffs' intended purchase (i.e., an unfinished frame or receiver) as an "article that has reached *a stage in manufacture*."  Id. (emphasis added).  The second part of this definition describes Plaintiffs' intended conduct (i.e., building a finished frame from the unfinished frame or receiver) as "*complet*[*ing*], *assembl*[*ing*], or *convert*[*ing*]" the previously manufactured article into "the frame or receiver" of a firearm.  Id. (emphasis added).

Thus, the statute describes Plaintiffs' intended conduct as completing, assembling, or converting—not as creating or manufacturing.  That this definition separates the *manufacture* of the unfinished frame or receiver from its ready *completion*, *assembly*, or *conversion* into a finished one informs our interpretation because "[a] word or phrase is presumed to bear the same meaning throughout a text, while a material variation in terms suggests a variation in meaning."  Rocky Mountain Gun Owners v. Polis, 467 P.3d 314, 330 (Colo. 2020) (citing Antonin Scalia & Bryan A. Garner, Reading Law: The

13

Interpretation of Legal Texts 170 (2012)).  Plaintiffs argue that the definition of

unfinished frame or receiver envisions a "further stage of manufacture" that encompasses

their intended conduct—"manufacturing" an unfinished frame into a finished one.  But

this is not what the statute says.  Instead, the Colorado legislature used "a material

variation in terms"—completing, assembling, or converting—suggesting a variation in

meaning.[9]

Other parts of the statutory scheme further suggest that completing, assembling,

and converting an unfinished frame is materially different from the manufacturing

contemplated by C.R.S. § 18-12-111.5(5)(a)(I).  Just before defining an unfinished frame

or receiver, the statute defines a 3D printer as a "manufacturing device" that "produc[es]

a three-dimensional object" through "an additive manufacturing process."  C.R.S. § 18-

12-101(1)(y).  Yet taking an unfinished frame to a finished frame is not similarly

described as "producing" the finished frame through a manufacturing process—it is

described as completing, assembling, or converting the finished frame.  C.R.S. § 18-12-

101(1)(z).

---

[9] Plaintiffs also argue that the phrase "stage of manufacture" necessarily
contemplates a continuing manufacturing process, but this argument is unpersuasive
because the statute does not use this phrase.  The statute actually says "stage *in*
manufacture," not "stage *of* manufacture."  "Stage in manufacture" does not
necessarily suggest an ongoing manufacturing process.  Instead, one could read this
to say that the "article" (e.g., casting, extrusion, machined body, etc.) reached a stage
*during* manufacture where it can "readily be completed, assembled, or converted"
into a finished frame.  This reading is consistent with the Colorado legislature's
separation of the manufacturing of the unfinished frame with its ready completion,
assembly, and conversion into a finished one.

That the manufacturing ban lists 3D printing as its only example of activity constituting manufacturing, C.R.S. § 18-12-111.5(5)(a)(I) ("[a] person shall not manufacture . . . including through the use of a three-dimensional printer, a frame or receiver of a firearm"), further supports a reading that limits the prohibition to making frames or receivers from raw material—not the completing, assembling, or converting a previously manufactured and unfinished frame into a finished one.  See St. Vrain Valley Sch. Dist. RE-1J v. A.R.L. by & through Loveland, 325 P.3d 1014, 1021–22 (Colo. 2014) ("Under the well-worn canon of statutory construction *noscitur a sociis*, 'a word may be known by the company it keeps.'" (quoting Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 287 (2010))).  After considering the statute in context, we conclude that the manufacturing ban unambiguously excludes Plaintiffs' intended conduct of making PMFs from firearm parts kits.

Plaintiffs urge against this conclusion because Colorado courts "must avoid interpreting a statute in a way that would defeat the obvious intent of the legislature." Appellant's Br. at 32 (citing Klinger v. Adams Cnty. Sch. Dist. No. 50, 130 P.3d 1027, 1031 (Colo. 2006)).  According to Plaintiffs, reading the manufacturing prohibition to permit building PMFs from firearm parts kits undermines the statute's purpose of ensuring all gun owners undergo background checks.  But as the State points out, a gun owner who purchases a serialized firearm parts kit to build into a PMF *is* required to undergo a background check.  Appellees Br. at 23 (citing 18 U.S.C. § 922(t)(1); C.R.S. § 18-12-111.5(7)).  Plaintiffs do not explain how gun owners will avoid these requirements.  Thus, reading the manufacturing prohibition to require a "full-blown

federal firearms license" to build a PMF from a firearm parts kit is unnecessary to achieve the statute's purpose.  Indeed, as Plaintiffs colorfully describe, such a reading is an odd fit for this statute and "is like hitting a fly with a sledgehammer."  Thankfully, the plain language of C.R.S. § 18-12-111.5(5)(a)(I) does not require us to adopt this reading.

Because Plaintiffs' intended conduct is not "proscribed by a statute," see Susan B. Anthony List, 573 U.S. at 159 (quoting Babbitt, 442 U.S. at 298), Plaintiffs have not shown an injury in fact and lack standing to pursue their manufacturing-prohibition claims.[10]

B.

Having established that the Individual Plaintiffs meet the injury-in-fact element for their possession-prohibition and acquiring-prohibition claims, we must now consider the remaining elements of standing: causation and redressability.  To fulfill the causation element of standing, a plaintiff must show "a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact."  Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, 993 F.3d 802, 814 (10th Cir. 2021) (quoting Nova Health Sys. v. Gandy, 416

---

[10] Although we do not reach the question of whether Plaintiffs have shown a credible threat of prosecution for their manufacturing-prohibition claims, we note that the State has argued before this Court that § 18-12-111.5(5)(a) does not prohibit persons from making firearms from serialized firearm parts kits.  See Baker v. USD 229 Blue Valley, 979 F.3d 866, 874 n.4 (10th Cir. 2020) ("[A] government defendant's credible disavowal of enforcement intent may defeat pre-enforcement standing.") (citing United States v. Sup. Ct. of N.M., 839 F.3d 888, 901 (10th Cir. 2016); Consumer Data Indus. Ass'n v. King, 678 F.3d 898, 904 n.1 (10th Cir. 2012)).  Here, the State's argument that Plaintiff's conduct is not "manufacturing" as defined by the statute is an express disavowal that may also serve to defeat pre-enforcement standing as to the manufacturing-prohibition claims.

F.3d 1149, 1156 (10th Cir. 2005)).  Redressability, meanwhile, requires a plaintiff to show "that a favorable court judgment is likely to relieve the party's injury."  WildEarth Guardians v. Pub. Serv. Co. of Colo., 690 F.3d 1174, 1182 (10th Cir. 2012) (quoting City of Hugo v. Nichols (Two Cases), 656 F.3d 1251, 1264 (10th Cir. 2011)).

The State does not dispute the causation element for any claim and Individual Plaintiffs have shown that the challenged Colorado statute caused their alleged injuries. Each previously purchased and possessed unserialized firearm parts kits and PMFs before the statute's enactment, and each intends to resume these activities if we enjoin the statute. This establishes causation for both claims.  Similarly, the State does not dispute that we can redress Plaintiff Richardson's alleged injury based on his inability to possess his unserialized firearm parts kits in Colorado.  As the district court found, enjoining the Colorado statute would "resolve Plaintiff Richardson's alleged injuries by removing the alleged violation of his Second Amendment rights."  Thus, Plaintiff Richardson has established all the elements of standing for his possession-prohibition claim.

Whether Plaintiffs' acquiring-prohibition claims are redressable is a more complicated question.  The district court did not examine this issue because it determined that these claims were not ripe, although it noted that the ATF Final Rule "seem[ed] to present a problem for Plaintiffs' claims from a redressability perspective." Indeed, an "unchallenged legal obstacle" that is "enforceable separately and distinctly from the challenged provision" can create a redressability problem when the plaintiff brings a pre-enforcement challenge.  See We the Patriots, Inc. v. Grisham, 119 F.4th 1253, 1259 (10th Cir. 2024) (quoting Bishop v. Smith, 760 F.3d 1070, 1078 (10th Cir. 2014)).   Here, the

"unchallenged legal obstacle" is the ATF Final Rule which, like C.R.S. § 18-12-111.5(2)(a), bans the purchase and sale of unserialized firearm parts kits. See, e.g., Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24652, 24690 (Apr. 26, 2022) (codified as 27 C.F.R. pts. 447, 478, and 479) (discussing changes made by the rule to address unserialized firearms including "80% receivers").

Although the ATF Final Rule independently bars *some* purchases of unserialized firearm parts kits, it does not reach as far as Colorado's law. Unlike Colorado's statute, the ATF Final Rule is inapplicable to private individuals. See, e.g., id. at 24653 (specifying that the final rule does not require private individuals to "mark their own PMFs for personal use, or when they occasionally acquire them . . . or sell or transfer them"). If Plaintiffs' intended conduct includes purchasing from private individuals, Colorado's statute causes a discrete injury beyond the ATF Final Rule that this Court can relieve with a favorable judgment. This is sufficient for redressability. See Nova Health Sys., 416 F.3d at 1158 (specifying that a favorable judgment need only relieve "a discrete injury" and not "every injury") (citing Larson v. Valente, 456 U.S. 228, 243 n.15 (1982)).

The remaining question, then, is whether Plaintiffs' intended conduct includes purchasing unserialized firearm parts kits from private individuals. Rocky Mountain Gun Owners ("RMGO")—a recent case involving another pre-enforcement challenge to a Colorado gun regulation—is instructive. 121 F.4th 96 (10th Cir. 2024). There, the plaintiffs sought a preliminary injunction against a Colorado law that set the minimum age for gun purchases at twenty-one. Id. at 104. Plaintiffs did not challenge a separate federal law that also prohibits gun sales to under-twenty-one-year-olds. Id. at 111 (citing 18 U.S.C.

18

§ 922(b)(1)).  We noted that "[a]t first blush" this unchallenged federal law could "pose redressability issues."  Id.  Yet federal law contains an exception for shotgun and rifle purchases that Colorado law does not.  Id.  Although the plaintiff had not specified that he intended to purchase a firearm that fell within these federal exceptions, he had stated his intention to "lawfully purchase" a firearm.  Id.  We concluded that these lawful intentions were enough to show that the plaintiff "aim[ed] to purchase a firearm in a way that complies with [federal law] but is otherwise prohibited by [Colorado law.]"  Id.  Thus, we could redress his injury "by allowing him to make a lawful purchase within the limits set by federal law."  Id. at 111–12.

Plaintiffs did not specify how they would purchase unserialized firearm parts kits.[11] At the same time, each Plaintiff stated that they are "law-abiding citizen[s]" who would "continue purchasing firearm parts kits and assembling them into firearms . . . but for" the Colorado statute.  And each Plaintiff made these statements in declarations signed while the ATF Final Rule was in force.  See Garland v. Vanderstok, 144 S. Ct. 44 (2023) (granting stay of order vacating the 2022 ATF Final Rule on August 8, 2023); App. Vol. I at 50–51, 54–55, 56–57 (signing declarations in January 2024).  As in RMGO, Plaintiffs' statements that they would purchase unserialized firearm parts kits but for the Colorado statute, along with the qualifier that they are "law-abiding," show that each "aims to purchase a firearm in a way that complies with [the 2022 ATF Final Rule] but is otherwise prohibited by" the Colorado statute.  RMGO, 121 F.4th at 111.  This is sufficient to show that a favorable

---

[11] Each had previously purchased firearm parts kits from Polymer80

judgment could redress the alleged injuries flowing from Plaintiffs' acquiring-prohibition

claims.  Individual Plaintiffs have thus established standing for these claims.[12]

## III.

To sum up, we agree with the district court that Individual Plaintiffs have standing

to challenge Colorado's possession prohibition but lack standing to challenge Colorado's

manufacturing prohibition.  We disagree with the district court that Individual Plaintiffs'

---

[12] The partial dissent would conclude that Plaintiffs have forfeited any argument that their ability to purchase unserialized firearm parts kits from private individuals renders their acquisition-prohibition claims redressable.  Respectfully, we do not agree that these arguments are forfeited or waived.  As discussed above, Individual Plaintiffs filed declarations stating that they would purchase unserialized firearm parts kits but for the Colorado statute—despite the ongoing enforcement of the 2022 ATF Final Rule.  Plaintiffs made the same allegations in their complaint and motion for temporary injunction.  Although Plaintiffs did not specify how they would make these future purchases, "such granular specificity is unnecessary in this context," RMGO, 121 F.4th at 110, and the government never challenged Plaintiffs' ability to make these purchases below.  It was not until the district court determined sua sponte that Plaintiffs' acquisition-prohibition claims were unripe that anyone suggested the 2022 ATF Final Rule prohibited Plaintiffs' desired conduct.  Plaintiffs responded to the district court's sua sponte ripeness determination by clarifying (at the first available opportunity) that they could acquire unserialized firearm parts kits from private individuals despite the 2022 ATF Final Rule.  Under these circumstances, we may review an appellant's argument under our typical standards of appellate review.  See United States v. Lowe, 117 F.4th 1253, 1268–69 (10th Cir. 2024) (noting that when the district court raises and resolves an issue sua sponte, "the appellant 'may challenge that ruling on appeal on the ground addressed by the district court even if he failed to raise the issue in the district court'" (quoting United States v. Hernandez-Rodriguez, 352 F.3d 1325, 1328 (10th Cir. 2003))).

Even if Plaintiffs failed to preserve this argument as the partial dissent suggests, the government never argued for waiver or forfeiture and "has waived the waiver such that we may consider" Plaintiffs' argument.  Herrera v. City of Espanola, 32 F.4th 980, 997 n.9 (10th Cir. 2022) (citing Schell v. Chief Just. & Justs. Of Okla. Sup. Ct., 11 F.4th 1178, 1191 n.6 (10th Cir. 2021)).

challenge to the acquiring prohibition is unripe, and instead conclude that Individual Plaintiffs may bring this challenge.

Having assessed Individual Plaintiffs' standing, we move on to NAGR and RMGO's standing.  An association has standing if just "one member of the association would have had standing to sue in his or her own right."[13]  Utah Ass'n of Cntys. v. Bush, 455 F.3d 1094, 1099 (10th Cir. 2006) (citing Warth v. Seldin, 422 U.S. 490, 511 (1975)). Here, because each Individual Plaintiff is a member of both organizations, NAGR and RMGO's associational standing mirrors the Individual Plaintiffs' standing.  Thus, the district court determined that NAGR and RMGO had standing to challenge the possession prohibition because Plaintiff Richardson established standing for this claim. But it determined that NAGR and RMGO did not have standing to challenge the manufacturing prohibition because no Individual Plaintiff had such standing, and it did not reach the associational standing issue for the acquisition-prohibition challenge because it determined that this challenge was not ripe.  As with our conclusions on Individual Plaintiffs' standing, we conclude that the Associational Plaintiffs have

_____

[13] In our Circuit, we determine associational standing by whether "(1) at least one of its members would have standing to sue in the member's own right; (2) the interest it seeks to protect is germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the member to participate in the lawsuit." Speech First, Inc. v. Shrum, 92 F.4th 947, 949 (10th Cir. 2024) (citing Friends of the Earth v. Laidlaw, 528 U.S. 167, 181 (2000)).  The State does not dispute that the second and third elements are satisfied here.

standing to pursue the possession-prohibition and acquisition-prohibition claims, but not the manufacturing-prohibition claims.

IV.

With standing resolved, we analyze Plaintiffs' possession and acquisition-prohibition claims. The district court limited its analysis of the merits to Plaintiffs' possession-prohibition claims. The district court determined that Colorado's law prohibiting the possession of unserialized firearm parts kits and PMFs did not implicate the plain text of the Second Amendment and denied Plaintiffs' motion for a preliminary injunction.

We review the district court's denial of a preliminary injunction for abuse of discretion. Diné Citizens Against Ruining Our Env't v. Jewell, 839 F.3d 1276, 1281 (10th Cir. 2016) (citing Wilderness Workshop v. BLM, 531 F.3d 1220, 1223 (10th Cir. 2008)). Preliminary injunctions are "extraordinary" remedies, so plaintiffs must show their right to relief is "clear and unequivocal." Schrier v. Univ. of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005). Plaintiffs must prove: "(1) a likelihood of success on the merits; (2) a likely threat of irreparable harm to the movant; (3) the harm alleged by the movant outweighs any harm to the non-moving party; and (4) an injunction is in the public interest." Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114, 1128 (10th Cir. 2013) (citing Winter v. NRDC, 555 U.S. 7, 20 (2008) aff'd sub nom., Burwell v. Hobby Lobby

22

Stores, Inc., 573 U.S. 682 (2014)).  Factors three and four merge when the State is the party opposing the injunction.  Nken v. Holder, 556 U.S. 418, 435 (2009).

The district court denied Plaintiffs' request to enjoin the possession prohibition.  It characterized the bar on unserialized firearm parts kits possession as "pertain[ing] to prior purchases."  Relying on Heller, the court then concluded that Colorado's regulation of prior purchases "imposes a condition on the commercial sale of a firearm" and is presumptively constitutional.  App. Vol. II at 505–06 (citing District of Columbia v. Heller, 554 U.S. 570, 626–627 (2008)).  We interpret this as addressing the likelihood-of-success prong of the preliminary injunction analysis.  The district court did not assess whether Colorado's regulation of unserialized frames and firearms is consistent with the Nation's history and tradition of firearms regulations under Bruen, see N.Y. State Rifle & Pistol Ass'n, Inc., v. Bruen, 597 U.S. 1 (2022), and did not address the remaining preliminary injunction factors.

We cannot agree with the district court that the possession prohibition is purely a "condition or qualification on the commercial sale of firearms."  Although the district court characterized the Colorado statute as "pertain[ing] to prior purchases," the at-issue provisions regulate unserialized frame and firearm *possession*—no matter how a person previously acquired the frame or firearm.[14]  See C.R.S. § 18-12-111.5(1)(a) ("A person

---

[14] To illustrate the point: If Colorado's law regulated past purchases, then Individual Plaintiffs' attempts to move, destroy, and serialize their previously purchased unserialized firearm parts kits and PMFs would not have saved them from criminality.  Of course, such a bold legislative move would raise serious constitutional questions over its retroactive application.  Unsurprisingly, no one suggests that Individual Plaintiffs have already violated the statute through their past

shall not knowingly possess . . . an unfinished frame or receiver . . . ."); id. at (3)(a) ("A

person shall not knowingly possess . . . a firearm or frame or receiver of a firearm. . . .")

As we recently explained, a regulation is not a condition or qualification on the

commercial sale of firearms if the regulation "ha[s] nothing to do with the [conduct's]

commercial nature."  Ortega v. Grisham, 148 F.4th 1134, 1147 (10th Cir. 2025).

Although Plaintiff Richardson purchased his firearm parts kit from a commercial seller,

he would risk violating C.R.S. § 18-12-111.5(1)(a) even if he had received this firearm

parts kit as a gift from a friend.  This provision has nothing to do with the commercial

nature of the prior transaction.  Because a regulation of firearm *possession* is not a

condition or qualification on the *commercial sale* of firearms, the district court abused its

discretion in denying Plaintiffs' motion for a preliminary injunction on this basis.[15]

The district court did not reach the merits of Plaintiffs' acquisition-prohibition

claims because of its ripeness determination.  We decline to reach the merits of this claim

in the first instance.  See Singleton v. Wulff, 428 U.S. 106, 120 (1976) ("It is the general

---

purchases, rather, any potential criminality derives from the continued *possession* of the unserialized frames and firearms.

[15] The partial dissent would remand this question for the district court to consider again in light of our recent decisions in RMGO and Ortega.  While we appreciate that the district court did not have the benefit of these decisions, the district court's characterization of Colorado's regulations on possession as regulations on past purchases that impose conditions or qualifications on the commercial sale of firearms was wrong when it was decided.  As discussed above, our recent decision in Ortega only makes this clearer.  Rather than remand, we hold that C.R.S. § 18-12-111.5(1)(a) and (3)(a), as applied to Plaintiffs' possession-prohibition claims, regulate firearm possession and do not impose conditions or qualifications on the commercial sale of firearms.

rule, of course, that a federal appellate court does not consider an issue not passed upon below.")  Instead, we leave this question for the district court to decide on remand.

V.

We AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.

No. 24-1209, National Association for Gun Rights et al. v. Jared S. Polis.

**KELLY**, Circuit Judge, concurring in part and dissenting in part.

This challenge to Colo. Rev. Stat. § 18-12-111.5 is premised on Plaintiffs' claimed right to possession of unserialized frames or receivers after January 1, 2024. The challenged statute requires unfinished firearms, frames, and the resultant privately-made firearms (PMFs) to be imprinted with serial numbers. It also imposes a background check requirement in connection with serialization.

I agree with the court that Plaintiff Richardson had standing to pursue the possession-prohibition claims and that Plaintiffs lack standing to pursue their manufacturing-prohibition claims. I disagree with the court that the Plaintiffs have standing to pursue their acquisition-prohibition claims insofar as private transactions. Finally, I would remand for the district court to reconsider its holding that the statute is presumptively constitutional as to the serialization challenge insofar as mere possession by these Plaintiffs in light of our recent decisions addressing various restrictions.

A.  Acquisition-Prohibition Claims

The complaint indicates that the individual Plaintiffs purchased firearms kits from Polymer80. The case before the district court contains no indication that Plaintiffs intended to purchase unserialized frames or receivers or firearms from one another or from other private individuals, let alone receive them as a gift from a friend. I Aplt. App. 8–11 (Complaint ¶¶ 7–9), 50–57 (Declarations); III Aplt. App. 516–18 (Mr. Schlosser's testimony); see Ct. Op. at 19–20. To the contrary, the Plaintiffs indicated that they purchased firearms kits from Polymer80, have assembled handguns from the kits, and

"desire to continue purchasing firearms parts kits and assembling them into firearms . . . ." I Aplt. App. 50, 54, 56. They further indicate that their unserialized firearms will not be sold or transferred to anyone. Aplt. Br. at 9; Aplt. Reply Br. at 3. At the preliminary injunction hearing, Mr. Schlosser testified that a privately manufactured firearm "is used strictly for individual use and -- and firing. It's not something that is ever intended to be resold or ever intended to be gifted or transferred in any way, shape, or form." III Aplt. App. 518–19, 524; accord Aplt. Br. at xi (Glossary). At oral argument, Plaintiffs described their challenge to the serialization requirement as an as-applied challenge that did not involve any sales, just possession. Oral Arg. at 4:29–4:40; 11:26–11:37. In my view, merely because Plaintiffs have declared that they are law-abiding citizens is not sufficiently specific to encompass the purchase (and sale) of unserialized firearms parts kits from private individuals.

Plaintiffs had the burden to prove standing at the outset of the litigation and that it still exists. That means showing "injury in fact," causation, and redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). Injury in fact requires that the injury be actual and imminent, not conjectural or hypothetical. Id. at 560. Redressability requires that the problem will be ameliorated by a favorable decision. Id. at 561.

On appeal, Plaintiffs contend that they have standing as to the acquisition-prohibition claims because they could acquire frame kits from private individuals given that the ATF Final Rule does not prohibit non-FFLs[1] from transferring unserialized,

---

[1] Federal Firearms Licensee.

unfinished frames to private parties (such as one Plaintiff purchasing from another

Plaintiff, as opposed to purchasing from a FFL), whereas the statute does. Compare

Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. at 24653,

with C.R.S. § 18-12-111.5. Thus, a favorable decision would allow them to acquire 80

percent frames from private individuals. Aplt. Br. at 37–39. Absent the statute,

theoretically Plaintiffs could acquire unfinished frames from non-FFLs and complete

them. See Aplt. Reply Br. at 19.

In my view, Plaintiffs forfeited this argument by failing to present it to the district

court and not arguing for plain error on appeal. See Richison v. Ernest Group, Inc., 634

F.3d 1123, 1127–28 (10th Cir. 2011) ("[I]f the theory simply wasn't raised before the

district court, we usually hold it forfeited."). The complaint does not contain this theory

and it does not come from the declarations or the testimony. Had it been included or

developed, no doubt the state could have inquired about it and the district court could

have considered it. Instead, no Plaintiff testified that they could acquire unserialized,

unfinished frames from a non-FFL, and Plaintiffs did not assert this argument in their

motion, let alone their testimony at the preliminary injunction hearing. See I Aplt. App.

27–40 (motion); III Aplt. App. 516–32 (Mr. Schlosser's testimony), 533–44 (Mr.

Richardson's testimony), 545–56 (Mr. Howard's testimony). Moreover, the position on

appeal is inconsistent.

The court relies upon Rocky Mountain Gun Owners v. Polis, 121 F.4th 96, 111–12

(2025), to conclude that redressability is met. There the minor did not specify what type

of firearm he would purchase or from whom. This court determined that redressability

3

was satisfied because the plaintiff indicated he would like to lawfully purchase a firearm and the federal prohibition did not include shotguns or rifles. Nothing in Rocky Mountain Gun Owners suggested that the supply of firearms (shotguns or rifles) might be materially diminished. Here, given a niche market, nothing suggests that any Plaintiff is willing to sell or transfer an unserialized frame, receiver, or firearm, let alone that such a potential exists from other private parties. Merely because Plaintiffs state they are law abiding does not suggest that contrary to past practice, they would now seek out unserialized frames and receivers, particularly given the firearms kits they seek have come from commercial vendors and are now serialized.

The court responds that we should consider this theory in support of standing because the district court addressed ripeness sua sponte and consequently ordinary standards of review should apply. The court also contends that the State has not argued waiver or forfeiture. But it is the Plaintiffs' responsibility to allege standing based upon the facts alleged. Moreover, the rule that we may address issues the district court resolves sua sponte still requires a sufficiently developed record where the district court resolved a precise legal question. See United States v. Hernandez-Rodriguez, 352 F.3d 1325, 1328–29 (10th Cir. 2003). Here, the district court was not presented with the factual predicate of the Plaintiffs trading 80 percent frames among themselves, but rather the Plaintiffs acquiring unserialized firearms from FFLs.[2] The district court remarked

---

[2] Only on appeal do Plaintiffs conjecture that "Richardson could sell one of his 80 percent frames that he removed to another state to, for example, Howard" and that "Howard's inability to acquire an 80 percent frame from Richardson (or any other private

that based upon the facts it had that redressability could be a problem.  II Aplt. App. 497.

Here, there is a real question as to whether there is a supply of unserialized, unfinished

frames from private individuals, particularly given the legal landscape and the current

federal regulation requiring serialization by FFLs.

Based upon this record, I would conclude that Plaintiffs have forfeited this

argument, or alternatively, that actual injury is lacking, or that the claim is unripe, as the

government argues.  Although the government did not argue forfeiture or waiver, it did

point out the lack of factual support for this theory.  Aplee. Br. at 31.  For the "waive the

waiver or forfeiture" rule to apply, generally the law and the facts must be sufficient for

the district court to rule on the issue.  See Rollins v. Home Depot USA, Inc., 8 F.4th 393,

398–99 (5th Cir. 2021).  That certainly was not the case here.

B.   Likelihood of Success on the Merits

The district court held that the possession-prohibition provision, "§ 18-12-111.5—

as it pertains to prior purchases for unserialized frames or receivers—imposes a condition

on the commercial sale of a firearm, which was recognized as constitutional in Heller and

that was not abrogated or called into question in any way in Bruen."  II Aplt. App. 506.

The district court did not have the benefit of our decisions in Rocky Mountain Gun

Owners, 121 F.4th 96, and Ortega v. Grisham, 148 F.4th 1134 (10th Cir. 2025).  I would

remand for the district court to consider these decisions after input from the parties,

---

individual) is completely independent" of the restriction on FFLs selling 80 percent
frames to him.  Aplt. Br. at 37–38.

particularly whether commercial sales can encompass mere possession acquired prior to enactment.